UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.

Amro Sharafeldin,

    Defendant.
_____/

Case: 5:24-cr-20702
Assigned To : Levy, Judith E.
Referral Judge: Grand, David R.
Assign. Date : 12/19/2024
Description: IND USA V SHARAFELDIN (MRS)

VIOLATIONS:

18 U.S.C. § 371
42 U.S.C. § 1320a-7b

## INDICTMENT

THE GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment, unless otherwise specified:

### The Medicare Program

1. The Medicare Program ("Medicare") is a federally funded health care program providing benefits to persons who are sixty-five years of age or older or disabled. Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency within the Department of Health and Human Services ("HHS"). Individuals who receive Medicare benefits are Medicare "beneficiaries."

2. Medicare is a "health care benefit program," as defined by 18 U.S.C. § 24(b). Medicare has four parts: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

3. A Medicare claim is required to set forth, among other things, the beneficiary's name, address, date of birth, social security number, Medicare Beneficiary Identification number ("BIN"), the date the services are provided, the cost of the services provided, and the name and identification number of the physician or other provider who had ordered the services. BINs are established under Title 42, United States Code, Chapter 7, subsection XVIII.

4. Enrolled Medicare providers agree to abide by the policies and procedures, rules, and regulations governing reimbursement, and, furthermore, certify that they will not knowingly present, or cause to be presented, false and fraudulent claims. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies and procedures, rules, and regulations, issued by CMS and its authorized agents and contractors.

5. Medicare further requires providers to certify that they understand that a payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with these laws, regulations, and program instructions,

including the Federal Anti-Kickback Statute. Accordingly, Medicare does not pay claims procured through kickbacks and bribes.

6. Medicare Part B provides supplementary medical insurance benefits that covers certain doctors' services, outpatient care, preventive services, and medical supplies.

7. From April 4, 2022, to May 11, 2023, while the Covid-19 public health emergency was in effect, Medicare covered and paid for up to eight over the counter ("OTC" i.e., not prescribed or ordered by a physician) Covid-19 test kits per month for people with Medicare Part B who requested them under the terms of the Over-the-Counter Covid-19 Test Demonstration. Providers could provide and bill Medicare for the requested OTC Covid-19 test kits if the beneficiary requested the test kit.

**Defendant and Relevant Entity**

8. AMRO SHARAFELDIN (DoB: XX/XX/1984) is a resident of Wayne County, Michigan, and during the relevant period was the owner of Prestige Specialty Pharmacy, LLC, which did business as Prestige Specialty Pharmacy ("Prestige") in Sterling Heights, Michigan, beginning in or around 2018 and continuing through about July 2023.

9. According to Medicare records, from at least 2020 to 2023, only SHARAFELDIN electronically signed Medicare agreements as an officer of and on behalf of Prestige.

10. Based on these Medicare documents, Prestige was enrolled as a pharmaceutical provider with Medicare Part B and was able to submit claims to Medicare Part B for "over the counter" ("OTC") Covid-19 test kits.

## COUNT 1

**(18 U.S.C. § 371—Conspiracy to Defraud the United States and to Pay and Receive Health Care Kickbacks)**

11. The General Allegations in paragraphs 1-10 are re-alleged and incorporated by reference as though fully set forth herein.

12. From about January 2023, and continuing through about May 2023, the exact dates being unknown, in the Eastern District of Michigan and elsewhere, AMRO SHARAFELDIN and others did willfully and knowingly, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate and agree with each other, to execute a scheme and artifice to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program, in violation of Title 18, United States Code, Section 371, and to commit an offense against the United States, that is:

4

   a. to knowingly and willfully offer to pay or pay any remuneration, including kickbacks and bribes, directly or indirectly, overtly or covertly, in cash or in kind, to a person to induce such person to refer an individual for the furnishing or arranging for the furnishing of an item or service for which payment may be made in whole and in part under a federal health care program, that is, Medicare, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A).

## Purpose of the Conspiracy

13. It was the purpose of the conspiracy for AMRO SHARAFELDIN to unlawfully enrich himself by, among other things, working with others to offer and pay kickbacks and bribes in exchange for referring Medicare beneficiary information to Prestige for SHARAFELDIN to use to submit or cause the submission of claims to Medicare for OTC Covid-19 test kits.

## Manner and Means

14. The manner and means by which the defendant and his co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

15. SHARAFELDIN enrolled Prestige with Medicare as a participating provider that provided services to Medicare beneficiaries under Part B.

16. Prestige, with the involvement and under the direction of SHARAFELDIN, entered into contracts with other companies pursuant to which the

5

companies provided identifying information for Medicare beneficiaries so that Prestige could bill Medicare for OTC Covid-19 test kits to be sent to the beneficiaries.

17. Prestige, with the involvement and under the direction of SHARAFELDIN, offered to pay or paid the companies a set dollar amount per beneficiary, and Prestige was required to pay this amount only if a claim submitted for the beneficiary was paid by Medicare.

18. Medicare beneficiaries to whom Prestige sent OTC Covid-19 test kits had not requested the test kits.

19. Prestige, with the involvement and under the direction of SHARAFELDIN, engaged a billing company to submit claims to Medicare for the OTC Covid-19 test kits.

20. From the reimbursement amounts Medicare paid to Prestige, SHARAFELDIN and Prestige paid at least one company some of the amount owed to it in accordance with their agreement, that is, they paid a set amount for each beneficiary for whom Prestige was reimbursed by Medicare for OTC Covid-19 test kits.

## Overt Acts

21. In furtherance of the conspiracy and to accomplish its objects and purpose, SHARAFELDIN and his co-conspirators committed or caused to be

committed in the Eastern District of Michigan, and elsewhere, at least one of the following overt acts, among others:

22. In February 2023, SHARAFELDIN travelled from Michigan to Florida to meet with representatives of some of the companies with whom Prestige entered into contracts to acquire Medicare beneficiaries' information for the purpose of billing Medicare for services.

23. In February 2023, SHARAFELDIN negotiated contracts on behalf of Prestige with the companies and worked with those companies to set up Prestige's ability to bill or cause the billing to Medicare for OTC Covid-19 test kits.

24. In February 2023, Prestige, with the involvement and under the direction of SHARAFELDIN, acquired lists of Medicare beneficiaries' information from the companies with which Prestige had contracted.

25. In February 2023, Prestige, with the involvement and under the direction of SHARAFELDIN, provided the lists of Medicare beneficiaries' information to another company for the purpose of billing Medicare for OTC Covid-19 test kits.

26. In or about February 2023, SHARAFELDIN submitted and caused to be submitted, on behalf of Prestige, a claim to Medicare for the provision of OTC Covid-19 test kits to a Medicare beneficiary with the initials D.G. for a total billed amount of approximately $96, for which Medicare reimbursed Prestige.

27. In or about February 2023, SHARAFELDIN submitted and caused to be submitted, on behalf of Prestige, a claim to Medicare for the provision of OTC Covid-19 test kits to a Medicare beneficiary with the initials R.D. for a total billed amount of approximately $96, for which Medicare reimbursed Prestige.

28. For the period of February 2023 through March 2023, SHARAFELDIN submitted or caused to be submitted, on behalf of Prestige, more than 10,000 claims to Medicare for OTC Covid-19 test kits and received reimbursements from Medicare for that period totaling more than $1,000,000.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2

**(18 U.S.C. § 371—Conspiracy to Defraud the United States and Purchase Medicare Beneficiary Information)**

29. The General Allegations in paragraphs 1-10 are re-alleged and incorporated by reference as though fully set forth herein.

30. From about January 2023, and continuing through about May 2023, the exact dates being unknown, in the Eastern District of Michigan and elsewhere, AMRO SHARAFELDIN and others did willfully and knowingly, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate and agree with each other, to execute a scheme and artifice to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health

and Human Services in its administration and oversight of the Medicare program, in violation of Title 18, United States Code, Section 371, and to commit an offense against the United States, that is:

    a. to knowingly and willfully purchase, sell, distribute, and arrange for the purchase, sale, and distribution of Medicare beneficiary information numbers, that is, BINs, without lawful authority, in violation of 42 U.S.C. § 1320a-7b(b)(4).

## Purpose of the Conspiracy

31. It was the purpose of the conspiracy for AMRO SHARAFELDIN to unlawfully purchase Medicare beneficiary information numbers so that he could enrich himself by submitting or causing the submission of claims to Medicare for OTC Covid-19 test kits.

## Manner and Means

The manner and means by which the defendant and his co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

32. SHARAFELDIN enrolled Prestige with Medicare as a participating provider that would provide services to Medicare beneficiaries under Part B.

33. Prestige, with the involvement and under the direction of SHARAFELDIN, entered into a contract with another company pursuant to which SHARAFELDIN agreed to pay the company to provide lists of Medicare

9

beneficiaries' identifying information for the purpose of Prestige billing Medicare for OTC Covid-19 test kits.

## Overt Acts

34. In furtherance of the conspiracy and to accomplish its objects and purpose, SHARAFELDIN and his co-conspirators committed or caused to be committed in the Eastern District of Michigan, and elsewhere, at least one of the following overt acts, among others:

35. In approximately February 2023, SHARAFELDIN, on behalf of Prestige, helped negotiate a contract with a company that agreed to provide Medicare beneficiary information in exchange for payment.

36. In February 2023, SHARAFELDIN received Medicare beneficiary information from the company with whom it had contracted.

37. In approximately March 2023, Prestige, with the involvement and at the direction of SHARAFELDIN, paid the company at least $100,000 for the Medicare beneficiary information.

All in violation of Title 18, United States Code, Section 371.

## Forfeiture Allegation
(18 U.S.C. § 982(a)(7), 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c) — Criminal Forfeiture)

38. The allegations contained in Counts 1-2 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures

pursuant to Title 18, United States Code, Section 982(a)(7) and/or Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

39.     Pursuant to Title 18, United States Code, Sections 982(a)(7) and 981(a)(1)(C) together with Title 28, United States Code, Section 2461(c), upon conviction of a conspiracy to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A) and (b)(2)(A)-(B), in violation of Title 18, United States Code, Section 371, the defendant, AMRO SHARAFELDIN, shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. As part of any forfeiture order in this action, the United States intends to seek a forfeiture money judgment.

40.     If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;
    b.    has been transferred or sold to, or deposited with, a third party;
    c.    has been placed beyond the jurisdiction of the court;
    d.    has been substantially diminished in value; or
    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

THIS IS A TRUE BILL

s/GRAND JURY FOREPERSON

DAWN N. ISON
United States Attorney

*s/ Mark Chasteen*
MARK CHASTEEN
Chief, White Collar Crime Unit

*s/ Andrew J. Lievense*
ANDREW J. LIEVENSE (P68925)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
andrew.lievense@usdoj.gov
(313) 226-9665

Date: December 19, 2024

**ORIGINAL**

| United States District Court<br>Eastern District of Michigan | Criminal Case Co | Case: 5:24-cr-20702<br>Assigned To : Levy, Judith E.<br>Referral Judge: Grand, David R.<br>Assign. Date : 12/19/2024<br>Description: IND USA V SHARAFELDIN (MRS) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to co

| **Companion Case Information** | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes    ☒ No | AUSA's Initials: |

**Case Title:** USA v. AMRO SHARAFELDIN

**County where offense occurred :** Macomb

**Check One:**    ☒ Felony    ☐ Misdemeanor    ☐ Petty

____Indictment/____Information --- **no** prior complaint.
✓ Indictment/____Information --- based upon prior complaint [Case number: 24-mj-30238 ]
____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____    **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

December 19, 2024
Date

Andrew J. Lievense
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: 313-226-9665
Fax:   313-226-2621
E-Mail address: andrew.lievense@usdoj.gov
Attorney Bar #: P68925

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.